**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MENA SAMARA, an individual, et al., | ) |
| | ) |
| Plaintiff, | ) |
| vs. | )     NO.  CIV-06-0494-HE |
| | ) |
| SOUTHWESTERN BELL YELLOW | ) |
| PAGES, INC., a foreign corp., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiffs Mena Samara and Anthony Lemos and their company, All City Bail Bonds, L.L.C., sued Southwestern Bell Yellow Pages, Inc. ("SWBYP"), SBC Advertising, L.P.,[1] and Jared Norman[2] in state court, asserting breach of contract, invasion of privacy and gross negligence claims.  The defendants removed the case on the grounds of diversity jurisdiction and defendant Norman, a nondiverse defendant, has filed a motion to dismiss.  He contends the complaint fails to state a claim against him and that he was fraudulently joined. The plaintiffs have filed a motion to remand, asserting that Norman was properly joined and that because he, like the plaintiffs, is an Oklahoma citizen, the removal was improper under 28 U.S.C. § 1441(b).

"The case law places a heavy burden on the party asserting fraudulent joinder." Montano v. Allstate Indem., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. April 14,

---

[1]As the plaintiffs do not differentiate between the two entities in the First Amended Petition, the court will refer to them collectively as "SBC."

[2]Other defendants were named in the initial petition, but were not included in the First Amended Petition.

2000)[3].  After disputed questions of fact and ambiguities in the controlling law are resolved

in favor of the non-removing party, *see* Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir.2005),

the court then determines "whether that party has any possibility of recovery against the party

whose joinder is questioned."  Montano, 211 F.3d 1278, 2000 WL 525592, at *1 (quoting

Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) and applying same standard as Fifth

Circuit).

In their first amended petition, the plaintiffs allege that All City Bail Bonds signed an

advertising contract with SBC.[4]  The company bought a small anchor advertisement, a large

picture advertisement, and a simple listing from defendant Norman, an SBC sales

representative, who "sought and solicited" the purchase.  First Amended Petition, ¶ 9.  Due

to safety concerns arising from their line of business and because this was the first time All

City Bail Bonds was advertising in the Yellow Pages, Mena Samara specifically asked

defendant Norman for a guarantee from SBC that the directory would not include the

individual plaintiffs' personal information.  He assured her that SBC would not divulge any

personal data.  Later, after Ms. Samara had approved the layout Norman sent her for the large

ad, she again called SBC for assurance that the directory would include only a phone number

listing for All City Bail Bonds.  The plaintiffs claim that, despite Ms. Samara's request, SBC

---

[3]Montano is an unpublished decision cited for persuasive value only under 10th Cir.
R. 36.3(B).

[4]The plaintiffs do not specify the corporate defendant that signed the contract, alleging
that the advertising contract they executed conspicuously stated "SBC" and "Yellow Pages"
at the top of the page.  First Amended Petition, *¶ 9.*

printed their unlisted phone number and their unlisted home address, as well as the address and phone number for All City Bail Bonds in the Yellow Pages directory.  Since then, the plaintiffs allege, dangerous criminal clients have called their home and strangers have appeared at their front door.  They claim they are concerned for their personal safety and no longer enjoy the privacy of their own home.

Defendant Norman argues these allegations are insufficient to state a claim against him under Oklahoma law.[5]  He contends that he dealt with the plaintiffs solely in his capacity as an employee and agent of defendant SWBYP and that fact, combined with the plaintiffs' failure to allege that he acted in an individual capacity or outside the scope of his agency authority, or owed them an independent duty, defeats their claims against him.   Even if Samara and Lemos' personal information was published, Norman contends that he is not responsible as the directory was printed by SBC.

The general rule that an employee or agent is not liable to a third party he injures while performing his job is found in the Restatement (Second) of Agency § 352.

> An agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things.[6]

*See* Seitsinger v. Dockum Pontiac Inc., 894 P.2d 1077, 1080-81 (Okla. 1995) ("The general

---

[5]Because this is a diversity case the court looks to Oklahoma substantive law to determine whether the plaintiffs have stated a claim against defendant Norman.

[6]There are other exceptions, in addition to the two included in § 352, to this general rule.  E.g., fraud and duress. Restatement (Second) of Agency § 348.

rule is that the individual and the corporation are two separate and distinct legal entities.  The distinction is not ignored unless it can be shown that there is a scheme to defraud.  Officers of a corporation are not generally liable to third persons if they act within the power and purpose of the corporation and do not purport to bind themselves individually." (internal citation omitted)).  Applying this principle, courts have refused to hold a corporate officer individually liable for breach of warranty, *id.*, or breach of contract.  Watkins v. Cotton, 67 P.2d 957 (Okla. 1937).  The rule has also been applied when the underlying claim is in negligence.

In Walker v. Mathews, 775 P.2d 273 (Okla. 1989), chaperones on a church outing were sued after a youth drowned during the excursion.  The plaintiff contended the defendants had negligently supervised the youth.  The district court granted summary judgment in the chaperones' favor and the Supreme Court affirmed, finding that "each defendant assumed chaperone responsibilities as an agent of the Church, not in their individual capacity.  If defendants owed a duty to decedent it was as agents of the Church, not as individuals. " *Id.* at 274.  The court noted that nothing in the record indicated that the defendants were operating outside their agency relationship or had assumed a duty to the decedent as individuals.  In addition, both the Church pastor and the youth minister stated in affidavits that the chaperones were acting at all times as agents of the Church under the direction of the youth minister.

In situations involving the possibility of physical harm to another person, an employee may, however, be held liable to a third party.  The Oklahoma Supreme rejected a store

manager's argument that he could not be sued in negligence for nonfeasance or breach of the duty he owed his employer by a third person invitee who slipped and fell at the store in <u>J.C. Penney Co. v. Barrientez</u>, 411 P.2d 841 (Okla. 1965).  Citing exceptions found in Restatement (Second) of Agency §§ 354,[7] 355[8] to the general rule of nonliability, the court held the manager could be held personally responsible either because he undertook to discharge the duty his employer owed its invitees or because he was the custodian or person in charge of the store's premises.[9]

In an earlier decision, <u>Cook v. Safeway Stores Inc.</u>, 330 P.2d 375 (Okla. 1958), the Oklahoma Supreme Court refused to hold a store clerk liable for damages a buyer sustained

---

[7]Restatement (Second) of Agency § 354 provides:
An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize

[8]Restatement (Second) of Agency § 355 provides:
An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take.

[9]The Tenth Circuit discussed the <u>J.C. Penney Co.</u> decision in <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, 378 F.2d 879 (10th Cir. 1967), stating that in that case the Oklahoma Supreme Court "undertook to clarify the existing Oklahoma case law as to the joint liability of an employer and employee for negligence" by holding "that if an employer's premises are in the custody and control of an employee who is responsible to his employer for dangerous conditions existing on the premises, then he is liable for injuries to invitees to the same extent as the employer." *Id. at 881.*

when food items he purchased from the clerk made his sons seriously ill.[10]  Noting that the

petition did not allege that the agent had knowledge of the unfit condition of the food, had

assumed the responsibility placed upon his employer or owed a particular duty to the

plaintiff,[11] the court held that "[u]nless particular circumstances exist," the seller's obligation

to protect the consumer did not extend to the agent who merely made the sale.

While not dissimilar to J.C.Penney Co. and Walker, this case, as pleaded,[12] does not

clearly fall within either holding.  Norman is not alleged to have held a position similar to

that of the manager in J.C. Penney, who, in the public's eyes, "was the J.C. Penney

Company, or its local representative, or substitute," J.C.Penney Co. , 411 P.2d at 851, and

ultimately responsible for the protection of the store's customers or business invitees. *Id.*[13]

---

[10]The plaintiff had sued for breach of the implied warranty of fitness for human consumption.

[11]Unlike Norman, the employee defendant in Cook was not alleged to have been negligent.

[12]The plaintiffs rely in part on an affidavit they have attached to their response brief. The court has not considered it in resolving the motion, although some circuits have reviewed materials outside the pleadings when determining whether a resident defendant has been fraudulently sued.  E.g.,Legg, 428 F.3d at 1322 ("'The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.'") (quoting Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir.1998)). See Lobato v. Pay Less Drug Stores, 261 F.2d 406, 408-09 (10th Cir. 1958) (court upheld finding of fraudulent joinder, citing lack of basis for allegations in complaint and uncontradicted evidence in defendants' affidavits that they had nothing to do with alleged tortious act of the corporate defendant).

[13]Contrary to the defendant's assertions, there are "distinct allegations" as to him, personally.

He also is not alleged to have been under acting at all times under another's direction or to have been merely negligent, as were the agent chaperones in <u>Walker</u>.

The defendant argues, citing <u>Lobato v. Pay Less Drug Stores</u>, 261 F.2d 406 (10th Cir. 1958), that the plaintiffs' claims fail because they have not alleged any specific positive wrongful acts that he committed. <u>Lobato</u>, although not controlling as the Tenth Circuit was applying New Mexico law, does not support the defendant's position. In that case the Tenth Circuit upheld the district court's determination that the plaintiff had fraudulently joined a corporate officer and corporate employees to defeat removal. Applying the general rule that "if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom," *id*. at 408-09, the court concluded the complaint was deficient. It failed to state a negligence claim against the individual defendants because it did not allege specific conduct constituting their "affirmative direction, sanction, participation, or cooperation" in the corporate defendant's alleged tortious act of selling the plaintiff a defective bike. *Id*. at 409. The court also noted that the individual defendants' statements in their affidavits "that they had nothing to do with the assembly and sale of the bicycle" was uncontradicted. *Id*. Here, the plaintiffs have alleged defendant Norman's general participation in the alleged tort as the person who solicited the sale, acquired the necessary information, was involved in the preparation of the plaintiffs' ad, and knew of their privacy concerns. He, however, did not respond with evidence of his lack of involvement.

The plaintiffs also allege in their petition that Norman was grossly negligent. They essentially claim that, although he knew or should have known of the potential grave danger to them if their home address and phone numbers were published, and despite their repeated requests for confidentiality, Norman failed to ensure that their personal information was not disclosed to the general public. Oklahoma law recognizes different degrees of negligence.[14] The distinction between ordinary and gross is significant and the allegation of gross negligence distinguishes this case from those the defendant relies on.

While it is not completely clear under the cited authorities whether the plaintiffs can recover from defendant Norman, on the basis of the facts alleged, the court cannot conclude there is no possibility the plaintiffs have stated a claim against him or that it is clear there can be no recovery under Oklahoma law.[15] Accordingly, the court finds defendant Norman has not met his burden of establishing that he was fraudulently joined and his motion to dismiss [Doc. # 5] is **DENIED**.    His presence in the litigation destroys the court's diversity

---

[14]Oklahoma recognizes three degrees of negligence: slight, ordinary and gross. 25 Okla. Stat. § 5. The latter is defined as wanting slight care and diligence, id. § 6, and can be shown by an "intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty or property of another." Fox v. Oklahoma Mem'l Hosp,, 774 P.2d 459, 461 (Okla. 1989).

[15]As reflected by Montano, the Tenth Circuit does not appear to have adopted a fraudulent joinder standard in a published decision. The Fifth  Circuit noted in Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003)  that "[n]either our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion."   The same conclusion – that Norman was not fraudulently joined -- would be reached if the court applied the "reasonable possibility" standard used by the Eleventh Circuit in  Legg, 428 F.3d at 1324.

jurisdiction.  Accordingly, the plaintiffs' motion to remand [Doc. #17] is **GRANTED** and this action is remanded to the District Court of Oklahoma County.

      **IT IS SO ORDERED**.

      Dated this 28th day of June, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE